**FILED**

May 17 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0241

DA 15-0241

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 115

KEVIN D. FRIEDMAN, KIMBER-LEE
R. FRIEDMAN, LARRY S. FRIEDMAN,
LINDA J. FRIEDMAN and HIGH
MOUNTAIN SPIRIT QUEST, INC.,

        Plaintiffs and Appellees,

    v.

AARON G. LASCO and CONSTANCE A. LASCO,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV-15-193(A)
                    Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Aaron G. Lasco, Constance A. Lasco (Self-Represented),
                Belgrade, Montana

        For Appellees:

                Marcel A. Quinn, Hammer & Quinn, PLLC, Kalispell, Montana

                Sarah D. Simkins, Johnson, Berg & Saxby, PLLP, Kalispell, Montana

                      Submitted on Briefs:  January 13, 2016
                                Decided:  May 17, 2016

Filed:

                         _____
                                   Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Aaron G. Lasco and Constance A. Lasco ("Lascos") appeal pro se from the Order of the Montana Eleventh Judicial District Court, Flathead County, granting Plaintiffs Kevin D. Friedman, Kimber-Lee R. Friedman, Larry S. Friedman, Linda J. Friedman, and High Mountain Spirit Quest, Inc.'s ("Friedmans") application for Preliminary Injunction. We affirm.

## ISSUE

¶2      Appellants raise several issues on appeal which we consolidate and address as follows:

> *Did the District Court abuse its discretion when it granted the Friedmans' application for preliminary injunction?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      The Lascos owned Spirit Quest Archery, Inc., a professional archery retail sporting goods business located in Kalispell, Montana. On or about April 25, 2013, the Lascos executed a Purchase and Sale Agreement with the Friedmans as purchasers. As part of the Purchase and Sale Agreement the Friedmans paid the Lascos in excess of $600,000.00 for purchase of the business, business assets, and the real estate where the business was located.

¶4      At the time of the sale, the Lascos represented to Kevin Friedman that they would no longer be involved in the archery business as they intended to pursue a legal career together in the future. The Lascos entered a covenant not to compete with the Friedmans that was incorporated in and attached to the Purchase and Sale Agreement. It states:

2

Aaron G. Lasco and Constance A. Lasco agree to a covenant not to compete which shall prohibit; Sellers from owning an archery business that provides archery services or archery related sales or through affiliation with any other archery sales or services provider either as an employee, independent contractor, consultant, advisor, lender, or otherwise, within a one hundred (100) air-mile radius of the Real Property for a period of five (5) years following the Closing Date. This provision additionally applies to sales of archery equipment on the internet . . . .

¶5 The Lascos also agreed, as part of the covenant not to compete, that a violation of its terms could result in harm to the Friedmans' operation of the business. That clause in the Agreement states:

This non-compete covenant is intended to protect and govern all assets (including the goodwill portion) of the Corporation purchased by the Buyer from the Seller. It is agreed that the value of the assets is related directly to the personal goodwill of the Seller. It is agreed that essentially all of the goodwill value of the personal Property (Corporation) is personal goodwill established and possessed by Aaron Lasco and Constance Lasco, at the time of the sale. As such, it is recognized that Seller possesses the ability to do great harm to the corporate business by violating this non-compete covenant.

The Lascos and Friedmans further agreed:

In the event of a breach by Seller of the Covenant not to Compete provisions hereunder, Buyer may petition a court of equity for injunctive relief to restrain Seller from violating the provisions of the Covenant not to Compete agreement and, in addition, Buyer may seek any other remedy available under law, without the necessity of having to prove irreparable harm . . . ."

The District Court determined that the Friedmans would not have purchased the business without non-compete covenants in part because the covenants were required by the bank to obtain financing for the purchase.

¶6 After the sale of the business was final, Aaron Lasco went to work at Sportsman & Ski Haus ("Sportsman") in Kalispell, Montana, as a salesman in the hunting department,

3

which comprises approximately 20% of the store space. Aaron's pay was based in part on a commission structure that incentivizes increasing sales, including the sale of archery equipment.

¶7 At the time of purchase, Sportsman only had a single, one-sided shopping aisle with archery equipment that did not include bows. In 2014, Sportsman expanded its business and advertised a "new archery department, with experts, equipment, and a 20-yard shooting range." Sportsman now offers multiple aisles of archery equipment for sale, including bows, and the store holds itself out as a professional archery shop. Sportsman and Spirit Quest Archery currently sell many of the same archery products and accessories. Both stores also offer indoor shooting areas and staff experts to assist with archery sales and service.

¶8 Kevin Friedman testified to the District Court that Sportsman's "grand re-opening" of the new archery department in 2014 resulted in lost sales to Spirit Quest Archery. Aaron Lasco testified that while working at Sportsman he interacted with customers of Spirit Quest Archery and could have sold archery equipment to those persons. The District Court found that, as a result of the many similarities in their retail trade, Sportsman is a competitor of Spirit Quest Archery in the scope of professional archery sales and services. The court also found that Aaron Lasco is in a position where his significant experience and knowledge of the archery trade benefit Sportsman's archery staff and department. Finally, the court found that the Lascos, if found in violation of the covenant, could not likely pay a monetary judgment because they indicated a likelihood of bankruptcy if Aaron could not be gainfully employed.

4

Sportsman has indicated that it cannot guarantee Aaron's employment if he cannot work in the archery department at the store.

¶9 In March 2013, the Friedmans filed several breach of contract claims against the Lascos, including breach of the covenant not to compete. At the time, the Friedmans requested a preliminary injunction to stop Aaron Lasco from further employment at Sportsman until their claims are resolved. After holding a hearing on the preliminary injunction, the District Court issued an Order finding the covenant not to compete was valid because the sale of Spirit Quest Archery included an exchange of consideration for the business goodwill. The court also found that the covenant not to compete was within the statutory exception provided in § 28-2-704, MCA, as a valid restraint on trade. The District Court granted the Friedmans' preliminary injunction request on April 2, 2015, and concluded the Friedmans were likely to succeed on the merits because Aaron's work at Sportsman was likely a violation of the covenant. The court ordered Aaron to refrain from working as an employee at Sportsman. The Lascos appeal from that Order.

**STANDARD OF REVIEW**

¶10 An order granting an injunction is immediately appealable, notwithstanding the fact that the merits of the controversy remain to be determined. M. R. App. P. 6(3)(e). District courts are vested with a high degree of discretion to maintain the status quo through injunctive relief. *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, 82 P.3d 912. This Court will not disturb a district court's decision to grant or deny a preliminary injunction unless a manifest abuse of discretion is shown. *Cole v. St. James Healthcare*, 2008 MT 453, ¶ 9, 348 Mont. 68, 199 P.3d 810 (citing *Sweet Grass*

5

*Farms, Ltd. v. Bd. of Co. Comm'rs*, 2000 MT 147, ¶ 20, 300 Mont. 66, 2 P.3d 825). "A manifest abuse of discretion is one that is obvious, evident, or unmistakable." *Shammel*, ¶ 12. If the district court issues an injunction based on conclusions of law, we review those conclusions for correctness. *Cole*, ¶ 9.

## DISCUSSION

¶11 *Did the District Court abuse its discretion when it granted the Friedmans' application for preliminary injunction?*

¶12 The Lascos challenge the District Court's Order of preliminary injunction. They argue the preliminary injunction was incorrectly granted because the Friedmans failed to demonstrate a likelihood of success on the merits and a showing of irreparable harm. The Lascos argue that the court incorrectly entered the preliminary injunction because the covenant not to compete is invalid on the grounds that it creates an unreasonable burden on the Lascos and was not supported by valid consideration. The Friedmans respond first that the Lascos' appeal should be dismissed because the Lascos failed to provide the Court a record and failed to follow procedural rules requiring citation to the record. On the merits, the Friedmans counter that they established three statutory factors for a preliminary injunction when § 27-19-201, MCA, only requires success on one factor to support a grant of a preliminary injunction. The Friedmans argue the District Court Order should be affirmed because the court correctly determined the covenant not to compete was supported by valid consideration and it was not unreasonable because it involved the sale of a business.

6

¶13     First, we have determined it is not necessary to dismiss the appeal due to the Lascos' failure to submit the transcripts and record to support their arguments on appeal. However, as we cautioned in our Orders of June 15, 2015, and September 8, 2015, while the Lascos may prosecute their appeal in the manner they deem appropriate, this Court will disregard any statements that are not supported by the record as required by M. R. App. P. 12(1)(d).

**Preliminary Injunction**

¶14     Preliminary injunctions are governed by § 27-19-201, MCA, which sets forth in five subsections the circumstances in which an injunction may be granted:

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual;
> (4) when it appears that the adverse party, during the pendency of the action, threatens or is about to remove or to dispose of the adverse party's property with intent to defraud the applicant, an injunction order may be granted to restrain the removal or disposition;
> (5) when it appears that the applicant has applied for an order under the provisions of 40-4-121 or an order of protection under Title 40, chapter 15.

¶15     We note that the subsections of § 27-19-201, MCA, are disjunctive, and findings that satisfy one of the five factors are sufficient to support a preliminary injunction. *Sweet Grass Farms*, ¶ 27 (citation omitted).  The District Court entered the preliminary

injunction after finding that the Friedmans met the requirements of subsections (1) and (2). The Lascos argue on appeal that these factors were not satisfied by the District Court's findings.

¶16 The District Court concluded that the Friedmans demonstrated a likelihood of success on the merits under § 27-19-201(1), MCA. The court determined that the covenant not to compete was properly supported by consideration and, because it met the statutory exception for such covenants, it was reasonable and therefore a valid covenant. Under this analysis, the court then concluded that Aaron's employment at Sportsman is likely a breach of the covenant not to compete, and that the Friedmans are likely to succeed on the merits against the Lascos.

¶17 The Lascos argue that the Friedmans failed to demonstrate a likelihood of success on the merits necessary for the preliminary injunction on two bases. They contend that the covenant not to compete is invalid as the Friedmans paid no consideration for goodwill beyond the tangible assets and liabilities of the business. The Lascos further argue that the covenant not to compete is overbroad and creates an unreasonable burden on Aaron Lasco's ability to work in the Flathead Valley. The Friedmans respond that the District Court properly concluded they demonstrated a likelihood of success on the merits because the covenant not to compete is a valid and enforceable agreement that properly protects their new business by barring competition from its former owner.

**Validity of the Covenant not to Compete**

¶18 Montana law provides that contracts that restrain any person from exercising a lawful profession, trade, or business of any kind are generally void. Section 28-2-703,

MCA. However, Montana law also provides some exceptions to this rule, including where a person selling the goodwill of a business "may agree with the buyer to refrain from carrying on a similar business." Section 28-2-704(1), MCA. A covenant not to compete is a contract between two parties, and "[t]he language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." Section 28-3-401, MCA.

### 1. Consideration

¶19 The Lascos argue the Friedmans paid no consideration for goodwill as there is no line item monetary value of consideration in the sale agreement. The Friedmans argue the line item consideration for the value of the goodwill is unnecessary and does not need to be noted in the agreement under § 28-2-704, MCA. They also cite the District Court's finding that the Purchase and Sale Agreement between the parties specifically states that the Lascos sold the Friedmans "any goodwill" of Spirit Quest Archery.

¶20 The District Court found that the purchase and sale of Spirit Quest Archery was governed by the Purchase and Sale Agreement dated April 25, 2013. Pertinent to the sale of goodwill, the second clause of the Purchase and Sale Agreement states that "the Seller agrees to sell the Corporation Assets to the Purchasers . . . ." The definition of "Corporation Assets," per the agreement, includes "any intangible assets, of that certain business known as Spirit Quest Archery Inc., . . . including . . . all goodwill . . . ." The Lascos were paid in excess of $600,000 by the Friedmans for the purchase of the business. We conclude there is substantial evidence for the District Court to find that sufficient consideration was exchanged for the goodwill of Spirit Quest Archery. The

9

language of the Agreement is "clear and explicit" regarding the goodwill of the business and supports the court's conclusion. Section 28-3-401, MCA.

¶21 The District Court's findings and evidence related to goodwill are supported by the evidence and we conclude the court did not err in its conclusion regarding the exchange of proper consideration for goodwill in the Agreement. The court's determination was not an abuse of discretion.

**2. Reasonableness and Validity of the Covenant not to Compete**

¶22 The Lascos further argue that the covenant not to compete is invalid because it is overbroad and creates an unreasonable burden. They argue the covenant only covered specific competitors in the Flathead County area, not the entire county. The Friedmans respond that a covenant not to compete need not be restricted in scope to a specified "competitor" business. They assert the District Court's conclusion was proper because the covenant not to compete is enforceable as written under §§ 28-2-703 and -704, MCA.

¶23 Under § 28-2-703, MCA, a contract that restrains anyone from exercising a lawful profession, trade, or business is void. *See Bolz v. Meyers*, 200 Mont. 286, 296, 651 P.2d 606, 611 (1982). However, one of two exceptions provided in § 28-2-704, MCA, "allows a contract to contain a provision that the seller will not carry on a similar business within a specified county, city or part thereof so long as the buyer carries on a like business therein." *Bolz*, 200 Mont. at 296, 651 P.2d at 611.

¶24 Here, the District Court found the scope of the covenant prohibits the Lascos from "participating in archery repair, maintenance or sales, and in ALL capacities related to archery business . . . on Seller's own behalf or as a partner, member, manager, director,

10

officer, lender, or as an employee (including relief work) for five (5) years and within (100) miles of . . . (115 Rocky Cliff Lane, Kalispell, Montana, 59901) . . . ." The language in the parties' agreement falls within the statutory exception provided in § 28-2-704, MCA, because it involves the sale of goodwill of the Lascos' business and prohibits them from carrying on their former archery business. Lascos do not argue that this provision of the Agreement or the 100-mile radius from 115 Rocky Cliff Lane violates the geographic limitation set forth in § 28-2-704(2)(c) or (d), MCA. The covenant was entered into as part of the sale of Lascos' business, which the Friedmans continue to operate in the county. We agree with the District Court that the Friedmans are likely to prevail on their claim that the covenant between the parties is valid under the statute. Accordingly, we affirm the District Court because it did not abuse its discretion when it found that the covenant falls within the § 28-2-704, MCA, statutory exception governing covenants not to compete.

¶25    After finding that the covenant not to compete was valid, the District Court then analyzed the Friedmans' likelihood of success on their claims against the Lascos. This analysis asks:  If the covenant is valid, are the Friedmans likely to succeed on their claim that Aaron Lasco is in violation of the covenant?

¶26    The court found that Sportsman, Aaron's employer, was a competitor of Spirit Quest Archery. The court determined that Aaron is experienced and possesses the skills to advise customers and Sportsman with archery-related outfitting, repair, and similar issues. The court found that Aaron was employed at Sportsman on a partial commission basis, Sportsman had increased the size of the archery department and was attempting to

11

gain additional archery related customers, both stores carry similar items and provide similar services, and that Spirit Quest Archery lost sales when Sportsman opened its new archery department. The court found that Aaron interacted with Spirit Quest Archery customers in his position at Sportsman and that his sales position allowed him to share his knowledge and experience with other archery staff and management at the store. Thus, the court determined, Aaron's employment at Sportsman is in conflict with the covenant he signed with the Friedmans. Consequently, the District Court determined that Lasco's employment with Sportsman is likely a breach of the covenant not to compete. Based on these findings, the court concluded that the Friedmans were likely to succeed on their claims.

¶27 The District Court's determination that Aaron is likely in violation of the covenant not to compete is supported by the evidence in the record. The court properly determined that Aaron's likely violation of the covenant meets the requirements set forth in § 27-19-201(1), MCA, allowing for an injunction to be entered when it "appears that the applicant is entitled to the relief demanded." Because an applicant for preliminary injunction need only show success on one factor to meet the requirements under § 27-19-201, MCA, we conclude that the District Court properly entered the injunction against the Lascos because the Friedmans have made a proper showing for the preliminary injunction.

## CONCLUSION

¶28 The Friedmans have demonstrated that they are likely to succeed on the merits of their claims against the Lascos. The District Court concluded in its Order that "The

12

public has an interest in valid contracts being upheld and, at this preliminary stage, the contract and its non-compete provisions appear valid and enforceable." (Quotation omitted.) We agree. The District Court reached this decision based on proper evidentiary findings, it did not misapply the law, and it did not abuse its discretion. The Friedmans have shown a likelihood of success sufficient to warrant preliminary injunctive relief. Accordingly, we affirm the District Court's decision to grant a preliminary injunction to the Friedmans.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON