# Supreme Court of Texas

No. 20-0117

Robert W. Van Boven M.D., D.D.S.,

*Petitioner*,

v.

Scott Freshour, Margaret McNeese, Chris Palazola, Amy Swanholm, Timothy Webb, and Sherif Zaafran, M.D., in their Official Capacities as Officers of the Texas Medical Board,

*Respondents*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued September 29, 2021**

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which Justice Lehrmann, Justice Devine, Justice Blacklock, Justice Busby, Justice Bland, Justice Huddle, and Justice Young joined.

JUSTICE BOYD filed a dissenting opinion.

Federal and state law require the Texas Medical Board to report a disciplinary action against a physician to the National Practitioner

Data Bank[1] in order "to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance."[2] A report is generally considered confidential but is available to healthcare entities with which a physician is or may be affiliated.[3] Reports must be made "according to applicable federal rules and statutes."[4] The question before us is whether the Board is required by federal law or permitted by Texas law to merely revise an initial report of a temporary sanction—rather than void it—when the Board later finds that the allegations have not been proved. We answer no. Board officials making the revised report are therefore acting ultra vires and are subject to suit despite the Board's sovereign immunity. We reverse the judgment of the court of appeals[5] and remand the case to the trial court.

## I

The Board regulates the practice of medicine in Texas[6] and is authorized to take disciplinary action against a physician found to have

---

[1] *See* 42 U.S.C. §§ 11132, 11134, 11151(2) (requiring reporting of sanctions against physicians by state licensing boards); 45 C.F.R. §§ 60.1, 60.8 (designating the National Practitioner Data Bank as the report recipient); TEX. OCC. CODE § 164.060(b)(4) ("Not later than the 30th day after the date the board takes disciplinary action against a physician, the board shall report that action, in writing, to . . . the United States Secretary of Health and Human Service or the secretary's designee . . . .").

[2] 42 U.S.C. § 11101(2).

[3] *See id.* § 11137(b)(1); 45 C.F.R. § 60.18(a)(1)(i), (iv); *id.* § 60.20(a).

[4] 22 TEX. ADMIN. CODE § 187.5.

[5] 628 S.W.3d 513 (Tex. App.—Austin 2020).

[6] *See* TEX. OCC. CODE § 152.001(a).

2

engaged in certain conduct prohibited by statute.[7] When Board staff determine there is evidence of such conduct, an informal show compliance proceeding and settlement conference—ISC—is scheduled before at least two Board members.[8] A disciplinary panel of three Board members may also be convened "to determine whether a person's license to practice medicine should be temporarily suspended or restricted."[9] The panel may suspend or restrict a physician's license without prior notice or a hearing if notice of the action is provided immediately and a hearing is scheduled as soon as possible after ten days.[10] Otherwise, the physician and Board staff may appear before the panel, call witnesses, and submit evidence.[11] "If the disciplinary panel determines from the evidence presented to the panel that a person licensed to practice medicine would, by the person's continuation in practice, constitute a continuing threat to the public welfare, the disciplinary panel shall temporarily suspend or restrict the license of that person."[12]

A disciplinary panel was convened February 29, 2016, to consider complaints by two patients, referred to as Patients A and B, against Dr. Robert Wayne Van Boven, a board-certified neurologist. Van Boven,

---

[7] *See id.* §§ 164.051-164.055 (listing grounds for disciplinary action, prohibited practices, and unprofessional or dishonorable conduct).

[8] 22 TEX. ADMIN. CODE § 187.2(1); *see id.* § 187.11; TEX. OCC. CODE §§ 164.003-164.0031.

[9] TEX. OCC. CODE § 164.059(a); *see* 22 TEX. ADMIN. CODE § 187.56(a)-(b).

[10] *See* TEX. OCC. CODE § 164.059(c); 22 TEX. ADMIN. CODE § 187.60.

[11] *See* 22 TEX. ADMIN. CODE §§ 187.58-187.59.

[12] TEX. OCC. CODE § 164.059(b).

3

then age 56, had received a D.D.S. degree and practiced dentistry for 10 years before earning his M.D. degree. He had then practiced neurology for some 17 years, had never been the subject of a professional disciplinary action, had never had a claim for malpractice against him, had never been reported to a professional database, and had no arrest record. A sole practitioner, Van Boven had associated with Lakeway Regional Medical Center (Lakeway) since its opening in 2012.

Van Boven and the Board were not strangers. He had repeatedly complained to the Board of poor practices at Lakeway resulting in multiple findings of violations and impositions of fines. In turn, Lakeway had made 15 complaints against Van Boven, but unlike Van Boven's complaints, all but one of Lakeway's had been dismissed. A factor in the dysfunctional relationship between Lakeway and Van Boven may have been, according to one of his colleagues, that the doctor's zeal for patient care could be viewed as arrogant or insulting. In any event, as another colleague observed, Van Boven became a thorn in the side of Lakeway's administration and was viewed as a troublemaker.

The two patients' complaints before the disciplinary panel had been lodged within a few months of each other and pertained to medical examinations Van Boven had conducted a few weeks apart. The day after the hearing, the panel temporarily restricted his license. The panel's Order of Temporary Restriction was to remain in effect until "superseded by subsequent Order of the Board." The Board filed an Initial Report of the adverse action with the National Practitioner Data Bank in accordance with the Data Bank's *Guidebook*, which sets out

reporting procedures.[13]

The statutory and regulatory provisions specifically applicable to physician discipline do not provide for an administrative appeal from a disciplinary panel order, and Van Boven did not attempt to seek judicial review.[14] The Board is instead required to initiate a proceeding before the State Office of Administrative Hearings—SOAH—"as soon as practicable".[15] The Board filed a formal complaint against Van Boven six months after the disciplinary panel's Temporary Order issued. The record contains no explanation for the delay, other than the Board's offer of settlement in an ISC process a month after the Temporary Order, which Van Boven quickly rejected.

The complaint contained the same allegations made by Patients A and B in the disciplinary panel hearing along with those of a third patient and the one complaint by Lakeway that the Board had not rejected. The SOAH hearing began on May 22, 2017—well over a year

---

[13] The *Guidebook* in use at the time was the 2015 edition. *See* U.S. DEP'T OF HEALTH & HUM. SERVS., HEALTH RES. & SERVS. ADMIN., & BUREAU OF HEALTH WORKFORCE, NPDB GUIDEBOOK (2015) [hereinafter GUIDEBOOK], https://www.npdb.hrsa.gov/resources/2015NPDBGuidebook.pdf.

[14] We express no view on whether judicial review is available. *See* TEX. OCC. CODE § 164.009 ("A person whose license to practice medicine has been revoked or who is subject to other disciplinary action by the board may appeal to a Travis County district court not later than the 30th day after the date *the board decision is final.*" (emphasis added)); *see also Tex. Med. Bd. v. Wiseman*, No. 03-13-00210-CV & No. 03-13-00291-CV, 2015 WL 410330, at *3 (Tex. App.—Austin Jan. 30, 2015, pet. denied) ("We hold that . . . an appeal from any disciplinary action, including a temporary order such as the one here, may not be taken until the Board issues a final decision in the overall dispute following an ISC and contested case at SOAH pursuant to the procedures set out in the [Medical Practice] Act.").

[15] TEX. OCC. CODE § 164.059(e).

after the Temporary Order issued—and lasted five days. Board staff offered evidence from the three patients along with family members of the third patient. Van Boven offered the testimony of 14 witnesses, including himself, four physicians with whom he had practiced, and two medical assistants.

After reviewing and analyzing all the evidence in a 77-page Proposal for Decision issued September 15, 2017, the Administrative Law Judge (ALJ) found that the Board staff had failed to prove any of their allegations. Specifically, the ALJ found that "[b]ecause there are so many implausibilities and issues of doubt raised by the evidence, [Board staff] failed to prove that the allegations of Patients A and B are true." Thus, the ALJ concluded, "[s]taff failed to prove, by a preponderance of the evidence, that Dr. Van Boven is subject to sanction under [the] Texas Occupations Code". Staff strongly insisted to the Board that the case had been wrongly decided. The Board had the right to seek judicial review of the ALJ's findings and conclusions[16] but chose instead to adopt them. The Board's Final Order issued December 8, 2017. The order recited the ALJ's findings and conclusions as the Board's own, including the finding that Board staff had failed to prove the allegations of Patients A and B and the conclusion that Board staff had not proved that Van Boven was subject to sanction. The Final Order stated that "[t]his matter is hereby dismissed" and that "[t]his Order supersedes the Order of Temporary Restriction issued on February 29, 2016 and Respondent's license to practice medicine in Texas is no longer

---

[16] TEX. OCC. CODE § 164.0072(a).

6

restricted."[17] The temporary restriction of Van Boven's license, premised on grounds that the Board ultimately could not prove, lasted more than 21 months.

The Board was required to report its Final Order to the Data Bank. The Data Bank's *Guidebook* provides for three types of reports after an Initial Report of an adverse action taken against a physician, which the Board had filed following its Temporary Order. A Correction Report "corrects an error or omission in a previously submitted report by replacing it."[18] A Void Report is "the withdrawal of a[n] [Initial] [R]eport in its entirety" and is filed when the adverse action is "overturned on appeal".[19] "A Revision-to-Action Report is a report of an action that modifies an adverse action previously reported" to the Data Bank.[20] It "does not replace a previously reported adverse action but rather is treated as a separate action that pertains to the previous action."[21] Then "[b]oth reports become part of the disclosable record."[22]

Van Boven requested that the Board file a Void Report, insisting that the initial temporary sanction be completely removed as a blot on his record. The Board refused and instead filed a Revision-to-Action

---

[17] The disciplinary-panel hearing occurred on February 29, 2016, but the Order of Temporary Restriction was actually dated March 1, 2016.

[18] GUIDEBOOK, *supra* note 13, at E-7.

[19] *Id.* at E-8.

[20] *Id.*

[21] *Id.* at E-8 to E-9.

[22] *Id.* at E-9.

Report that simply described the Final Order.[23] Van Boven complained to the Data Bank, but it refused to take action, stating: "We are not authorized to substitute our judgment for that of the Board concerning the language contained in its Orders, its sanctioning authority or the intention of the Board in regard to the Initial and Final Orders in your case." Bound by the Board's explanation of its action, the Data Bank opined that the Board was "legally required to file the Revision to Action

---

[23] The Board's initial Revision-to-Action Report stated:

On December 8, 2017, the Board entered a Final Order regarding Robert Wayne Van Boven, M.D., dismissing the Board staff's complaint. The action was based on the findings of an Administrative Law Judge at the State Office of Administrative Hearings (SOAH). This order resolves a formal complaint filed at SOAH. This order supersedes all previous orders.

At the Data Bank's recommendation, the Board later filed a Correction Report stating:

On December 8, 2017, the Texas Medical Board entered a Final Order regarding Robert Wayne Van Boven, M.D. The Final Order states: 1) in the "Findings of Fact" section that because there are so many implausibilities and issues of doubt raised by the evidence, the staff of the Board failed to prove that the allegations raised by the patients were true, 2) in the "Conclusions of Law" section that the "staff failed to prove, by a preponderance of the evidence, that Dr. Van Boven is subject to sanction under Texas Occupational Code §§ 164.051(a)(1), (a)(5), or 164.053(a)(1), or 22 Texas Administrative Code Sections 190.8(2)(E), (F), (P), or (S)" and 3) that the Board adopted the Findings of Fact and Conclusions of Law as proposed by the Administrative Law Judge at the State Office of Administrative Hearings. The matter regarding Dr. Van Boven was dismissed and the December 8, 2017 Final Order superseded the February 29, 2017 Order of Temporary Restriction and Dr. Van Boven's license to practice medicine in Texas is no longer restricted.

Report."

Van Boven brought this ultra vires action against Board officials[24] for injunctive, declaratory, and mandamus relief directing them to file a Void Report with the Data Bank, which would remove the Initial Report and the Revision-to-Action Report from disclosure. Van Boven asserts that the reports have "forever tarnished" his reputation and prevented him from obtaining employment.[25] The trial court denied defendants' plea to the jurisdiction, which asserted sovereign immunity. The court of appeals reversed, holding that "the Board's authority to determine the legal effect of the Final Order *as it relates to [Data Bank] reporting requirements*" is not clearly limited by statute, and therefore Board officials did not act ultra vires in filing a Revision-to-Action Report instead of a Void Report.[26] The court rendered judgment

---

[24] Van Boven sued Board President Sheriff Zaafran, M.D.; former Board members Margaret McNeese, M.D., and Timothy Webb; and Scott Freshour, General Counsel. Van Boven also sued legal department employees Amy Swanholm and Chris Palazola. The trial court dismissed the action against the employees. Though all six defendants are respondents here, we consider only Van Boven's action against the Board officials.

[25] *See, e.g.*, *Stephan v. Baylor Med. Ctr.*, 20 S.W.3d 880, 891 (Tex. App.—Dallas 2000, no pet.) (noting the doctor's testimony that "a negative [Data Bank] report is viewed negatively by managed care plans and can make it difficult for a physician to gain entry to plans"); *Walker v. Mem'l Health Sys.*, 231 F. Supp. 3d 210, 216 (E.D. Tex. 2017) ("An adverse report on the [Data Bank] that deems a surgeon to have 'substandard or inadequate skill' is intrinsically harmful to that surgeon's practice, professional reputation, and livelihood."); *Cole v. St. James Healthcare*, 199 P.3d 810, 815 (Mont. 2008) (noting the trial court's "analog[y] [comparing] an adverse report to a scarlet letter that could permanently harm a physician's professional reputation" (quotation marks omitted)).

[26] 628 S.W.3d at 524.

9

dismissing Van Boven's action.

We granted Van Boven's petition for review.

## II

The Board's sovereign immunity from suit as a state agency extends to its officials who act consistently with the law[27] but not to those who act ultra vires—that is, "without legal authority or [by] fail[ing] to perform a purely ministerial act."[28] An official acts without legal authority when he "exceeds the bounds of his granted authority or if his acts conflict with the law itself."[29] An official fails to perform a ministerial act when he fails to comply with a law that "prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment."[30] An official who acts ultra vires is not acting for the state and not entitled to its immunity.[31] But "it is not an ultra vires act for an official to make an erroneous decision within the authority granted."[32]

---

[27] *See Hous. Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016) ("[G]overnmental immunity only extends to those government officers who are acting consistently with the law . . . .").

[28] *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

[29] *Hous. Belt*, 487 S.W.3d at 158.

[30] *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)).

[31] *See Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) ("The basic justification for this *ultra vires* exception to sovereign immunity is that *ultra vires* acts—or those acts without authority—should not be considered acts of the state at all." (citing *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945))).

[32] *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018) (citing *McRaven*, 508 S.W.3d at 242).

**A**

Relying primarily on our decision in *Hall v. McRaven*, the court of appeals concluded that the Board had discretion to *mis*interpret the federal requirements because, "[e]ffectively, the Legislature has tasked the Board with interpreting and applying federal law in carrying out its statutory duty to report disciplinary actions to the [Data Bank]."[33] Here, both sides take the position that the court of appeals erred in applying *McRaven* to this case, and we agree.

When deciding there that the chancellor of the University of Texas System did not act ultra vires by allegedly misconstruing federal law governing the release of educational records, we specifically relied on a rule adopted by the System's board of regents that expressly empowered the chancellor to "*determine whether* State or federal law restrict[ed]" the release of information and to "*determine whether* a Regent [could] review information . . . protected by" the federal law.[34] Because "the ultimate and unrestrained objective" of the chancellor's duty was "to interpret collateral law," we concluded that "a misinterpretation [was] not overstepping such authority; it [was] a compliant action even if ultimately erroneous."[35]

Here, however, no state or federal law grants the Board unrestrained authority to interpret federal Data Bank reporting requirements. To the contrary, federal law requires state licensing agencies to report information to the Data Bank "in such form and

---

[33] 628 S.W.3d at 523.

[34] *McRaven*, 508 S.W.3d at 242 (emphases added).

[35] *Id.*

11

manner as the [U.S.] Secretary [of Health and Human Services] prescribes."[36] Texas law, in turn, simply requires the Board to report all disciplinary actions to the Secretary or his designee,[37] and the Board's own rules require it to report the information "according to applicable federal rules and statutes."[38] Thus, the Board's failure to comply with the federal reporting requirements would amount to an ultra vires action.

**B**

The Board officials argue that there was no ultra vires action because "state law, federal law, federal regulations, and [Data Bank] guidance required [the Board] to submit a Revision-to-Action Report, and not a Void Report." They cite several federal statutes that require reporting by licensing agencies like the Board in the form and manner determined by the Secretary of Health and Human Services to be appropriate, but the statutes themselves do not prescribe what kinds of reports must be filed. The federal regulations the Board officials cite also do not prescribe what reports are required in particular circumstances. The Data Bank and its *Guidebook* do provide very detailed guidance on how various types of adverse actions should be reported, prescribing the four reports we have discussed. But applying that guidance depends on the nature of the adverse action being reported, which must be determined under Texas law, not federal law. The Data Bank made that clear. It approved the Board's explanation for filing a Revision-to-Action

---

[36] 42 U.S.C. § 11134(a).

[37] TEX. OCC. CODE § 164.060(b)(4).

[38] 22 TEX. ADMIN. CODE § 187.5.

Report rather than a Void Report, but in so doing, the Data Bank cautioned: "We are not authorized to substitute our judgment for that of the Board concerning the language contained in its Orders, its sanctioning authority or the intention of the Board in regard to the Initial and Final Orders in [Van Boven's] case." The Data Bank made clear that the nature of the adverse action against Van Boven was to be determined by the Board alone under Texas law, and that determination would dictate which report should be filed.

The Board's findings and conclusions in its Final Order negated the factual basis for the allegations against Van Boven, which were identical to the allegations by Patients A and B that the disciplinary panel used to support its Temporary Order. As we noted at the outset, Texas law allows the Board to discipline a physician only for engaging in specific conduct set out by statute.[39] The disciplinary panel, in a brief hearing, found that Van Boven had engaged in conduct proscribed by statute and that a temporary sanction should be imposed. But after a full hearing, SOAH found that the same alleged misconduct on which the temporary sanction was based had not been proved. That is, from the evidence, one could not conclude that the misconduct likely occurred or that Van Boven was subject to sanction. In its Final Order, the Board itself endorsed SOAH's conclusion.

The Board officials insist, correctly, that the Temporary Order was not under review in the SOAH proceedings and that the ALJ had

---

[39] *See* TEX. OCC. CODE §§ 164.051-164.055 (listing grounds for disciplinary action, prohibited practices, and unprofessional or dishonorable conduct).

13

no authority to overturn or vacate it. But the complaints of Patients A and B *were* under review in the SOAH proceedings, they were the same complaints made to the disciplinary panel, and they were the only basis for the Temporary Order. According to the Board's own final order, the factual basis for the Temporary Order was baseless and Van Boven was not subject to sanction. The Board officials argue that the ALJ did not make any findings or conclusions regarding the Temporary Order, but that is precisely what the ALJ did—and the ALJ did it at the instigation of Board staff, who initiated the proceedings, made the allegations, and requested a ruling.[40]

The Board officials argue that by stating Van Boven's license was "no longer restricted", the Final Order only *modified* the Temporary Order, as opposed to overturning or vacating it. Under the *Guidebook*, a Revision-to-Action Report is used to report modifications to an adverse action. But the Final Order did not modify a word of the Temporary Order. The Temporary Order stated that it "shall remain in effect until it is superseded by a subsequent Order of the Board", and that is what happened. The Final Order did not modify the Temporary Order; the

---

[40] As the dissent states, the issue before the disciplinary panel was "whether Van Boven's continued practice *at that time* (pending investigation and resolution of the formal complaint) would constitute a 'threat to public welfare.'" *Post* at 13. But the patient-complaint evidence before the disciplinary panel was the very same evidence SOAH found to be no evidence of misconduct. The dissent states that "[t]he panel made a prediction, based on the evidence before it, that the temporary restriction was necessary to protect the public welfare." *Post* at 16. But again, the panel could not predict from the lack of evidence of misconduct by Van Boven that the public welfare needed to be protected by limiting his practice. The Board itself later endorsed SOAH's conclusion that the allegations of Patients A and B had not been proved true and that Van Boven was not subject to sanction.

14

Final Order determined that the Temporary Order should not have issued.

"Crucially," the Board officials tell us in their brief, "the Final Order did not state that the temporary restriction had been imposed in error". The Final Order stated that "[b]ecause there are so many implausibilities and issues of doubt raised by the evidence, [Board staff] failed to prove that the allegations of Patients A and B are true." Those were the same allegations, and the only allegations, on which the disciplinary panel based its decision to sanction Van Boven. As we noted at the outset, a physician is subject to sanction only when he is found to have engaged in certain conduct prohibited by statute. While the disciplinary panel found that Van Boven engaged in misconduct, the Board concluded it had not been proved. The temporary sanction was thus imposed in error.

The Board officials point to the *Guidebook*'s instruction that a Void Report should be made when an adverse action is overturned on appeal. We have explained that the Final Order overturned the Temporary Order by concluding that the basis for its issuance had not been proved. We do not read the *Guidebook*'s simple reference to "appeal" to mean that a Void Report is not appropriate unless a sanction has been overturned on appeal in a judicial setting. A SOAH proceeding affords a physician who has been temporarily sanctioned an avenue for review, just as Van Boven had here. The result is the same as when an appellate court overturns a lower court ruling. Here, the Board itself reviewed the Temporary Order and SOAH proceedings and concluded that Van Boven was not subject to sanction. Under the *Guidebook*, a

15

Revision-to-Action Report allows the Initial Report to continue to be considered, but there is no reason to consider an Initial Report of a baseless action.

Because the nature of the Final Order under Texas law was to determine that no basis for the Temporary Order had been proved, the Board was required to file a Void Report with the Data Bank.[41] Officials' actions to the contrary were therefore ultra vires, and the officials are not immune from Van Boven's claims.

*     *     *     *     *

Accordingly, the judgment of the court of appeals is reversed and the case is remanded to the trial court for further proceedings.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** June 3, 2022

---

[41] The dissent repeatedly asserts that cannot identify any law the Board violated, but this ignores the Board's own position that it has no authority to misreport its actions to the Data Bank. The Board violated Section 164.060(b)(4) of the Texas Occupations Code, which requires reporting of disciplinary actions, by reporting its actions against Van Boven incorrectly. *See* 22 TEX. ADMIN. CODE § 187.5 (requiring the Board to make reports "according to applicable federal rules and statutes").