FILED

September 1 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0005

DA 15-0005

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 257

ERVIN SHARBONO and HANNELORE SHARBONO,

> Plaintiffs and Appellants,

v.

STEVEN L. COLE and PAT L. COLE,

> Defendants and Appellees.

APPEAL FROM:  District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV-08-48
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

> For Appellants:

> Reneé L. Coppock, Eli J. Patten, Crowley Fleck PLLP, Billings, Montana

> For Appellees:

> Geoffrey R. Keller, Matovich, Keller & Murphy, P.C., Billings, Montana

Submitted on Briefs:  July 29, 2015
Decided:  September 1, 2015

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Ervin and Hannelore Sharbono appeal from orders of the District Court excluding their expert witnesses and granting judgment and attorney fees in favor of the Coles. We reverse and remand.

¶2     Sharbonos present the following issues for review:

¶3     Issue One: Whether the District Court's order of September 3, 2014, properly granted the Coles' motion in limine to exclude the Sharbonos' expert witnesses from testifying at trial.

¶4     Issue Two: Whether the District Court properly granted judgment in favor of the Coles and awarded them attorney fees against the Sharbonos.

**BACKGROUND**

¶5     Sharbonos and Coles own adjoining parcels of land adjacent to Rock Creek in Carbon County, Montana. The Sharbonos have a senior right to the use of water that arises on the Coles' property and flows or seeps into a pond on the Sharbonos' property. In 1994 the Coles obtained a water use permit for a pond on their property, and in subsequent years they engaged in other development and construction. The Sharbonos contend that in 2007 the effect of the Coles' construction activities was to greatly reduce or eliminate the flow of water onto the Sharbonos' land and that they have been unable to utilize their senior water right. In 2008 the Sharbonos brought the present action against the Coles, contending that they interfered with the Sharbonos' water right by erecting a pond, engaging in significant construction activities; and placing rip-rap and fill in wet areas without taking adequate steps to protect the flow of water onto the Sharbonos'

2

property. The Sharbonos sought damages, an order requiring the restoration of the natural flow of water, attorney fees and costs.

¶6 The parties engaged in discovery. In 2012 the Coles moved for summary judgment, contending that the Sharbonos had no rights to any water arising on the Coles' property because the Sharbonos' point of diversion was not located on the Coles' property. The Sharbonos moved the District Court to certify the issue of the source of their water right to the Montana Water Court pursuant to § 85-2-406(2)(b), MCA. In March 2012 the District Court issued the certification order, and the Water Court issued its decision in May 2013.

¶7 The Water Court conducted a site visit and received briefing and argument from the parties. The Water Court found that the Sharbonos had an irrigation water right dating to August 5, 1963, and that the source of the right was water arising on or flowing through the Coles' property. The Water Court found that the Coles engaged in "considerable speculation to spin an alternative theory" to disprove the Sharbonos' water right, and that the Coles' assertions about the source of the Sharbonos' right "is wrong as a matter of law and defies common sense." The Water Court found that the ponds of each party are "built in the same slough or stream channel and share a common source of supply," with the Coles' pond located upstream from the Sharbonos' pond. The Water Court found that this is "obvious from a visual inspection." Further, the Water Court found that the State issued the water permit for the Coles' pond "with the intention that water would flow through the Cole pond and down to the Sharbono property."

¶8     The case returned to District Court in late 2013.  The parties continued with motions, including the Coles' motion in limine to exclude the Sharbonos' experts.  The motion was based upon the contention that the Sharbonos had served inadequate disclosures of their experts' opinions as required by Rule 26(b)(4), M. R. Civ. P.  After briefing, the District Court in September 2014 granted the Coles' motion in limine and prohibited the Sharbonos from calling any of their proposed expert witnesses.

¶9     The parties proceeded to a bench trial in October 2014.  At the conclusion of the Sharbonos' case-in-chief, the District Court granted the Coles' motion for a verdict in their favor.  In November 2014 the District Court entered findings of fact and conclusions of law, finding that the Coles had not interfered with the Sharbonos' water right; that the Sharbonos could only prove their case through expert testimony (which the District Court previously excluded); and that the Coles' activities on their property did not unreasonably interfere with the Sharbonos' water rights.  The District Court subsequently entered judgment for the Coles, awarding them costs and attorney fees of $81,846.51 against the Sharbonos.

## STANDARD OF REVIEW

¶10    This Court reviews a district court's rulings on the admissibility of expert testimony to determine whether there was an abuse of discretion.  *Norris v. Fritz*, 2012 MT 27, ¶ 17, 364 Mont. 63, 270 P.3d 79.

4

**DISCUSSION**

¶11   *Issue One:   Whether the District Court's order of September 3, 2014, properly granted the Coles' motion in limine to exclude Sharbonos' expert witnesses from testifying at trial.*

¶12   A party to civil litigation may discover from an opposing party information concerning any expert the party intends to call as a witness.   Rule 26, M. R. Civ. P., provides in part:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

Rule 26(b)(4), M. R. Civ. P.   The "spirit" of the civil rules requires "liberal disclosure" of witnesses.   *Superior Enterprises v. Montana Power Co.*, 2002 MT 139, ¶ 18, 310 Mont. 198, 49 P.3d 565.   The underlying purposes of Rule 26 are to eliminate surprise and to promote effective cross-examination of experts.   *Hendrickson v. State*, 2004 MT 20, ¶ 57, 319 Mont. 307, 84 P.3d 38.   A court should examine the adequacy of an expert disclosure in light of those underlying purposes.   *Harkins v. Harney*, 2003 MT 58, ¶ 24, 314 Mont. 384, 66 P.3d 305.   We evaluate a district court's sanction for an inadequate expert witness disclosure to determine whether the consequences of the sanction relate to the extent and nature of the actual discovery abuse; the extent of prejudice to the opposing party; and whether the district court warned the answering party of the consequences. *Hendrickson*, ¶ 58.   A factor in determining prejudice to the opposing party is whether that party could have obtained additional information by deposing the designated expert. *Hawkins*, ¶ 27; *Hendrickson*, ¶ 60; *Norris*, ¶ 21.   "A party may depose any person who

5

has been identified as an expert whose opinions may be presented at trial." Rule 26(b)(4)(A)(ii), M. R. Civ. P.

¶13 The District Court here noted that the Sharbonos served an initial expert disclosure in October 2011, after which the Coles moved to exclude the experts for inadequate compliance with Rule 26. The Sharbonos served a supplemental disclosure in February 2012. After the case returned from the Water Court, in March 2014 the District Court ordered simultaneous disclosures of experts pursuant to Rule 26, and the Sharbonos made a third supplemental disclosure. The Coles again moved to exclude the Sharbonos' experts for inadequate disclosure.

¶14 The District Court, in its order of September 3, 2014, granted the Coles' motion in limine and excluded all of the Sharbonos' experts from testifying at trial. The District Court concluded that the disclosures were "unsupported," citing a common sentence in each of them that "[d]efendants' acts, practices and construction activities have negatively impacted the Sharbonos' water rights." The District Court characterized this as a "legal conclusion unsupported by data and analysis." The District Court concluded that the Sharbonos had not adequately disclosed "reports, data and analyses," and did not include an analysis "on what numbers mean or opinions of where any contamination arose." It is unclear what contamination issue this refers to.

¶15 The District Court specifically determined that the disclosure as to expert Yelin was "vague" and did not sufficiently state the grounds for his conclusions. The District Court noted the report by Water Rights Inc., submitted by the Sharbonos as part of their expert disclosure, and dismissed it as being speculation, noting that it used phrases such

6

as "could have happened" and "probably curtailed." Based upon this, the District Court concluded that nothing in this report would be admissible and therefore was an inadequate disclosure. Finally, the District Court dismissed the Sharbonos' suggestion that the Coles had the opportunity to depose the experts but did not do so, noting that the Sharbonos did not offer to pay for all the costs of deposing the experts.

¶16 Rule 26(b)(4), M. R. Civ. P. requires a party, if asked to do so, to state the subject matter of the expert's testimony, the "substance" of the expert's expected facts and opinions, and a "summary" of the grounds for each opinion. The Rule does not require production of a separate report by the expert and does not require that the disclosures be stated in the exact form of trial testimony, requiring that information about opposing experts may "only" be obtained through an interrogatory seeking the Rule 26(b)(4)(A)(i) information. The district court can order the parties to make other or further disclosures, Rule 26(b)( 4)(A)(ii).

¶17 Early in the present case (June 2010) the Sharbonos served a pre-discovery disclosure required by local rule, disclosing the location of their property and the reference number for their water right claim. They stated that the Coles engaged in construction activities including building a large house, rip-rap, a shop building and placement of fill. They stated that the Coles failed to install culverts, drains or pipes to protect the springs that are the source of the Sharbonos' water rights. They stated that when the Coles constructed a pond in 2007, the spring water flowing from the Coles' property stopped. They stated that this construction activity and its interference with the flow of water damaged them and their water rights. They stated that the Coles had a duty

7

to refrain from interfering with their water right and that the Coles breached that duty by failing to mitigate the adverse impact of their construction activities.

¶18 In October 2011 the Sharbonos filed and served an expert disclosure pursuant to Rule 26, disclosing three experts. Lee Yelin was a Senior Water Rights Specialist with Water Rights, Inc. The subject matter of his expected testimony was his background in water rights; the extent of the Sharbonos' water rights; the findings of his site visit in September 2011; the photographs and maps attached to the disclosure; and the negative effect of the Coles' construction activities on the Sharbonos' water rights. The substance of Yelin's facts and opinions was that the Coles' construction activities negatively impacted the Sharbonos' water rights by decreasing the flow of water since 2007; that the source of the Sharbonos' water rights is a slough on the Coles' property; and that at the time of his inspection the only water flowing onto the Sharbonos' property was waste water from the Coles' corn crop irrigation. The substance of Yelin's facts and opinions also included a description of the Coles' shop and parking area and the fill and compaction that it required, which he believed likely altered the groundwater flow, and that an outlet culvert on the Coles' pond, observed in an earlier inspection, was not present. The substance of Yelin's facts and opinions also included that the Coles' bank stabilization and channel shaping along Rock Creek had directly plugged the opening of the tributary slough that had historically fed the Sharbonos' water rights. The disclosure stated that Yelin would opine that the Sharbonos had done nothing to decrease the flow of water to their property. Finally, the disclosure stated that the grounds for Yelin's testimony would be his background, experience and training; his knowledge of water

rights; his site visit; his review of water rights documents and other material produced during discovery; and his interviews with individuals who had knowledge of the facts.

¶19 Ben Horan was a Hydrologist, also with Water Rights, Inc. The subject matter of Horan's testimony was essentially similar to that stated for Yelin. The substance of Horan's facts and opinions was that the Coles' acts and construction activities negatively impacted the quality and quantity of the Sharbonos' water rights since 2007. The disclosure stated that Horan would explain how the Coles' soil compaction affected the Sharbonos' water rights and would include an analysis prepared by Alpine Analytical, attached to the disclosure. The disclosure stated that Horan would testify that the Coles' bank stabilization and channel shaping on Rock Creek directly plugged the opening in the slough that feeds the Sharbonos' water rights and caused the creek to move away to the east. Finally, the disclosure stated that the grounds for Horan's testimony would be his background, experience and training; his knowledge of water rights; his site visit; his review of water rights documents and other material produced during discovery; and his interviews with individuals who had knowledge of the facts.

¶20 Expert Howell, author of the Alpine Analytical report, would testify if needed to verify the water sample testing as set out in the report.

¶21 In February 2012 the Sharbonos filed a supplemental expert disclosure consisting of an affidavit of expert Yelin. The affidavit describes a number of documents and investigations he undertook to reach a conclusion that the source of the Sharbonos' water right is a series of springs located in an unnamed tributary of Rock Creek. The affidavit stated Yelin's conclusion that the springs arise on the Coles' property and then flow into

9

the Sharbonos' property where they use the water. A topographic map attached to the affidavit showed the location of the properties, the ponds and the slough. Yelin stated that the Coles' pond is fed by separate springs for which the Coles have separate water rights. Yelin stated that historic photos starting in 1962 (attached to the affidavit) show that the slough at issue runs through the Coles' property and is the source of water that flows into the Coles' wildlife pond and then onto the Sharbonos' property.

¶22 The Sharbonos filed and served a supplemental disclosure in April 2014 that included the prior disclosures for Yelin and Howell. It also contained the expert disclosure of Toby Hewitt, Senior Hydrologist with Whetstone Associates in Gunnison, Colorado. The subject matter of his testimony was essentially the same as Yelin's. The substance of Hewitt's facts and opinions was that the Coles' construction activities negatively impacted the Sharbonos' water rights, specifically that a berm the Coles constructed on the northern boundary of their property diverted return flows away from the Sharbonos' property and that this flow could have provided water to the Sharbonos' irrigation pond. Hewitt would also testify that the direction of groundwater flow changes depending upon the irrigation that the Coles carry on, and that at times of the year shallow groundwater flows onto the Sharbonos' property. Hewitt would also testify that a berm that the Coles built keeps water from flowing into the natural slough and onto the Sharbonos' property. Hewitt would also testify that the bottom of the Coles' pond was lower than the slough, adversely affecting the flow of water onto the Sharbonos' property. Finally, the disclosure stated that the grounds for Hewitt's testimony would be his background, experience and training; his knowledge of water rights; his site visit; his

10

review of water rights documents and other material produced during discovery; and his interviews with individuals who had knowledge of the facts.

¶23 The April 2014 supplemental expert disclosure included a disclosure for Richard Bondy, P.E. The subject matter of Bondy's testimony would include the current quality and quantity of the Sharbonos' water rights; the presence of clay soil and its use during construction; the negative effect of the Coles' construction on the Sharbonos' water rights, including the use of clay, sand and gravel that could change the groundwater flow. The substance of the facts and opinions in Bondy's testimony included that the Coles' construction activities negatively impacted the quantity and quality of the Sharbonos' water rights; that the Coles' construction caused a decrease in flow and quality of the Sharbonos' water rights, based upon compaction of the soil as it alters groundwater flows; that construction of the parking lot and use of clay, gravel and sand caused compaction that impacted historic water flows; that compaction of the soil around the Coles' shop created an impermeable surface in a former wetland that impacted the flow of water. Finally, the disclosure stated that the grounds for Bondy's testimony would be his background, experience and training; his knowledge of water rights as a professional engineer; his site visit; his review of photographs and water rights documents and other material produced during discovery and his interviews with individuals who had knowledge of the facts.

¶24 The April 2014 supplemental expert disclosure included a disclosure for Jeff Silkwood, a Geomorphologist and Project Advisor for Water Rights, Inc. The subject matter of his expected testimony was his background in water rights; the current quality

and quantity of the Sharbonos' water rights; the presence of clay soil and the effect of its use in construction; the negative effect of the Coles' construction on the quality of the Sharbonos' water rights; and damages. The substance of Silkwood's facts and opinions was that the Coles' construction activities have negatively impacted the quality and quantity of the Sharbonos' water rights; that the Coles' construction has caused a decrease in the flow rate and quality of the Sharbonos' water rights, particularly as to soil compaction and placement of a pipe into the channel; that the Coles' bank stabilization and channel shaping on Rock Creek that directly plugs the tributary slough, moving the creek away from the slough that has fed the Sharbonos' pond; and that the Sharbonos have not affected the decrease of water available to them. The grounds for Silkwood's opinions are his background and training, his knowledge of hydrology and water rights, his review of water rights documents and other documents produced in discovery and his conversations with others who have knowledge of the case.

¶25 The Sharbonos also furnished the Coles with a report by Water Rights, Inc., that included photographs of specific areas of the Coles' construction that had impacted the Sharbonos' water right. The Sharbonos also furnished a resume of each of the proposed witnesses.

¶26 A review of the expert disclosure materials furnished by the Sharbonos during the course of this case makes it clear that they did not "abuse" the discovery process. The analytical factors for examining the adequacy of expert witness disclosures relate to whether the party under consideration engaged in "discovery abuse." *Henrickson*, ¶ 58. A finding of "discovery abuse" is more properly relegated to such practices as providing

12

cryptic disclosures with no meaningful information, or attempting to call an un-disclosed expert at trial. *Superior Enterprises*, ¶ 19. We find no basis to conclude that the Sharbonos abused the discovery process in any way.

¶27 In addition, a review of the expert disclosure materials furnished by the Sharbonos makes it clear that they adequately complied with the requirements of Rule 26(b)(4), M. R. Civ. P. They complied with both the substance and the spirit of the Rule and it was an abuse of discretion for the District Court to strike all of their expert witnesses. This is particularly true in a case in which the District Court determined that the Sharbonos could not make out a prima facie case without expert testimony. In addition, there is no indication that the District Court warned the Sharbonos that they were in danger of having their case gutted by striking their experts.

¶28 There is also no demonstrable prejudice to the Coles based upon the quality of the Sharbonos' expert disclosures. While the Coles claim some degree of frustration and inability to determine the substance of the testimony of the Sharbonos' experts, the Sharbonos adequately met their disclosure obligations under Rule 26. The Rule requires disclosure of subject matter areas, the substance of facts and opinions, and a summary of the grounds. The Sharbonos met those requirements. If the Coles needed more information even after the Rule 26 disclosures, they were free to depose the experts.

¶29 We emphasize that all parties are required to provide full expert disclosures under Rule 26, and are required to comply with orders of the district court concerning expert disclosure. As we have stated:

The spirit of the Montana Rules of Civil Procedure requires liberal disclosure on the part of all parties, including the disclosure of witnesses. Failure to disclose an expert witness constitutes reversible error.

*Superior Enterprises*, ¶ 18. We reiterate what we said almost twenty years ago, that "dilatory abuse of discovery must no longer be dealt with leniently and that the transgressors of discovery abuses should be punished rather than encouraged repeatedly to cooperate." *Smith v. Butte-Silver Bow Co.*, 276 Mont. 329, 332, 916 P.2d 91, 92-93 (1996). Further, district courts have the discretionary power to impose sanctions appropriate to the case and to the discovery conduct at issue. A party who makes incomplete and evasive disclosures or who attempts to hide the true testimony of any expert does so at that party's peril. In this case, however, the Sharbonos complied with their disclosure responsibilities and should not have been sanctioned.

¶30    *Issue Two: Whether the District Court properly granted judgment in favor of the Coles and awarded them attorney fees against the Sharbonos.*

¶31    The judgment against the Sharbonos was entered at trial after they presented an abbreviated case in support of their complaint, without being able to present any of their disclosed experts. Because the experts were wrongfully excluded the result of the trial was tainted and must be reversed. Similarly, the District Court's award of attorney fees to the Coles as prevailing parties is reversed.

¶32    Therefore, the District Court is reversed and this case is remanded for further proceedings.

/S/ MIKE McGRATH

14

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT

Justice Beth Baker, concurring.

¶33     Effective October 1, 2011, following extensive study by this Court's Advisory Commission on Rules of Civil and Appellate Procedure, receipt of public comment, and consideration during several public meetings, the Court adopted comprehensive amendments to the Montana Rules of Civil Procedure.  The amendments were recommended by the Advisory Commission to bring Montana's rules more closely in line with the Federal Rules of Civil Procedure.  The Commission, however, recommended against wholesale adoption of the federal rules.  Among the federal rules that we did not adopt *in toto* is Rule 26.

¶34     Federal Rule 26 provides detailed requirements for expert disclosures that are not found in the Montana rules.  Relevant here, if a witness is retained for the purpose of providing expert testimony in the case, the witness's disclosure "must be accompanied by a written report – prepared and signed by the witness."  Fed. R. Civ. P. 26(a)(2)(B).  The report must contain:

| (i) | a complete statement of all opinions the witness will express and the basis and reasons for them; |
| (ii) | the facts or data considered by the witness in forming them; |
| (iii) | any exhibits that will be used to summarize or support them; |
| (iv) | the witness's qualifications, including a list of all publications authored in the previous 10 years; |

15

(v)   a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)   a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Under the federal rules, the test for sufficiency of the expert report is "whether the [report is] sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions [are] avoided, and costs are reduced." *Henson v. Baker Sch. Dist. No. 12 Bd. of Trustees*, No. CV 12-11-BLG-CSO, 2013 U.S. Dist. LEXIS 1554458, at *7 (D. Mont. 2013) (internal quotations omitted). The federal rule "requires the basis and reasons for every opinion, including the facts or data considered in forming them." *Henson*, at *9.

¶35   Montana's federal district courts have held, "An inadequate report or disclosure may result in the exclusion of the expert's opinions at trial even though the expert has been deposed." *Olson v. Mont. Rail Link, Inc.*, 227 F.R.D. 550, 552 (D. Mont. 2005). Under F. R. Civ. P. 37(c)(1), which "gives teeth to the expert disclosure requirements," the U.S. District Court has prohibited a party's expert "from relying in any way upon data or conclusions specifically not included and spelled out" in a timely disclosure, and has stricken opinions of the expert "that ha[ve] not been disclosed in compliance with the requirements of Rule 26(a) and the [court's] Scheduling Order[,] as [well as] any opinion or evidence based on undisclosed data or testing." *Olson*, 227 F.R.D. at 552-53. "Exclusion is appropriate for violations of the disclosure rules even where it may preclude an 'entire cause of action or defense.'" *Graham v. BNSF Ry. Co.*, No. CV 12-

145-M-DWM, 2014 U.S. Dist. LEXIS 39454 (D. Mont. 2014) (quoting *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

¶36 When proposing changes to the Montana Rules of Civil Procedure, the Advisory Commission rejected the initial disclosure and pretrial disclosure requirements of F. R. Civ. P. 26(a)(1) and (a)(3), as well as the detailed expert disclosure rules and report requirement of F. R. Civ. P. 26(a)(2). The Commission determined that

> those detailed expert disclosure rules – while appropriate in certain cases – are potentially too costly and difficult for the majority of civil cases handled by state district courts. To the extent detailed disclosure requirements beyond those of the existing Rule 26(b)(4) may be necessary, the district court has sufficient power to impose such requirements by virtue of its general powers over discovery as well as through the orders issued following preliminary pretrial conference or any discovery conference held pursuant to Rule 26(f).

Committee Notes to M. R. Civ. P. 26.

¶37 In excluding the Sharbonos' experts from trial, the District Court appears to have applied the federal standards, including the perhaps laudable consideration of avoiding excessive deposition costs in litigated cases. But Montana's rule—as discussed in the Opinion and set forth in our precedent—does not impose the federal standards. And the District Court did not enter any orders in this case calling for more detailed disclosures than the rule requires. Because Montana has not adopted the federal rule on expert disclosures, the distinction between the rules must be given significance. Sharbonos' expert disclosures met the requirements of Montana's Rule 26.

¶38 I concur.

/S/ BETH BAKER

17