FILED

08/23/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0600

DA 15-0600

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 204

CHRISS MACK and CAROLYN MACK,

     Plaintiffs and Appellees,

  v.

JIMMY ANDERSON, GLENDA ANDERSON,
KRISTIE ANDERSON, JOHN ANDERSON,
GLENDA F. ANDERSON and ROWDY ANDERSON,

     Defendants and Appellants.

ROWDY ANDERSON and JOHN ANDERSON,

     Cross-claim Plaintiffs,

  v.

TRACEY TUREK d/b/a TUREK WATER RIGHT
RESEARCH, LLC a Montana limited liability
company, and J-5 CONSTRUCTION,

     Cross-claim Defendants.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                 In and For the County of Ravalli, Cause No. DV 2014-231
                 Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

     For Appellants:

          Raymond P. Tipp, Tipp Buley, Missoula, Montana

          Terry Wallace, Attorney at Law, Missoula, Montana

     For Appellees:

          David B. Cotner, Datsopoulos, MacDonald & Lind, P.C., Missoula,
          Montana

Submitted on Briefs: June 8, 2016

Decided: August 23, 2016

Filed:

_____
                    Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Jimmy Anderson, Glenda Anderson, Kristie Anderson, John Anderson, Glenda F. Anderson, and Rowdy Anderson, (collectively the Andersons) appeal from the Findings of Fact and Conclusions of Law of the Montana Twenty-First Judicial District Court, Ravalli County.  The District Court concluded in its Order that Chriss and Carolyn Mack (Macks) shall have access to install a headgate at the point of diversion (POD) for Headgate No. 103 in South Burnt Fork Creek; that the Macks shall be provided access to the same POD, and along the course of the Mack Ditch across Andersons' property to install the headgate at POD No. 103; that the Temporary Restraining Order (TRO), stipulated to by the parties and Order on May 19, 2014, shall remain in full force and effect; and that the District Court may still award the Macks all of their reasonable attorney fees and costs under § 70-17-112, MCA.  We affirm.

## ISSUES

¶2      The Andersons raise several issues on appeal which we consolidate and restate as follows:

¶3      *Did the District Court exceed its jurisdiction by ruling on the merits of the parties' dispute?*

¶4      *Did the District Court exceed its jurisdiction by establishing or changing the POD for the ditch in dispute?*

¶5      *Did the District Court usurp the Andersons' right to a jury trial regarding the existence of an irrigation ditch which crosses Andersons' property?*

3

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 The Anderson and Mack families both own property in the South Burnt Fork Creek Watershed in Ravalli County, Montana. The Macks own a 160-acre section adjacent to the Andersons, who individually own several adjoined five-acre parcels along with a forty-acre parcel. The Mack property has fully adjudicated water rights in the South Fork Burnt Creek which are not at issue in the case. The water rights are "high water" rights which provide water for a limited time each year to the Mack property when there is high runoff in the creek. The Macks' water right claims, 76H 125130-00 and 76H 125131-00, have an attached map that depicts the general location of Headgate 103 and a ditch crossing the Andersons' property to the Mack property. While the record reflects some confusion regarding the name of the ditch, we will refer to the ditch as "Mack Ditch" for clarity. The water right claims set forth the legal description for the headgate in the SW1/4NW1/4SW1/4 of Section 4, Township 8 North, Range 19 West. The Macks' water rights POD was assigned the designation of Headgate 103.

¶7 After purchasing the property in 2002, the Macks performed yearly maintenance on their irrigation ditch from South Burnt Fork Creek from the POD continuously through 2012. In 2014, the Macks hired Tracey Turek to oversee maintenance on the ditch to prepare for the high water season. During this maintenance, the Macks discovered that a dam existed on the ditch that diverted South Burnt Fork water to a pond on the Andersons' property. Ms. Turek contacted the Andersons about removal of the blockage and received a hostile response. As a result, the Macks filed a complaint on

4

May 8, 2014, against the Andersons alleging violations of § 70-17-112, MCA, and seeking a temporary restraining order and preliminary injunction.

¶8 On May 9, 2014, Judge Haynes issued a TRO restraining the Andersons from interfering with the Macks' access to the Mack Ditch including their related rights under § 70-17-112, MCA, and ordered a show cause hearing for May 20, 2014. The parties subsequently entered into a Stipulation on May 16, 2014, that the TRO should remain in effect until further court order. The court upheld the stipulation on May 19, 2014, and vacated the show cause hearing.

¶9 Under the May 19, 2014 Order, Ms. Turek, with a work crew and the assistance of Dan Claggatt, water commissioner for South Burnt Fork Creek, initiated maintenance on the Mack Ditch. While the work was ongoing Jimmy Anderson allegedly threatened to harm Ms. Turek and anyone working on the Mack Ditch. On May 27, 2014, the Andersons filed a Motion to Dismiss the Macks Complaint. The motion claimed that the Mack Ditch did not exist on the Anderson property. The Andersons also filed a complaint with the Bitterroot Conservation District alleging the Macks failed to get a 310 permit prior to conducting maintenance on the ditch. The Bitterroot Conservation District determined Macks must obtain a permit and mitigate the disturbance to the Mack Ditch, including an improved control structure at the head of the ditch. When the Macks and Ms. Turek attempted to comply with the Bitterroot Conservation District mitigation order, they were stopped by the Andersons. The Andersons also obstructed the ditch with a load of gravel near the headgate.

¶10    In an effort to resolve the issue, the District Court held hearings to take evidence and ascertain whether the Macks were entitled to a preliminary injunction. The Macks presented evidence showing that the physical location of Headgate 103 and the legal description set forth in the Statement of Claim contained a discrepancy. The Statement of Claim included an attached map, which was not to scale, showing the ditch POD in the SWNWSW Section 4, Township 8 North, Range 19 West. The physical location of the headgate is in the NESWSW Section 4, Township 8 North, Range 19 West. Ms. Turek testified that the legal land description was listed in error. The Andersons contended this was because the Mack Ditch was not on their property but was in the SWNWSW section as listed on the Statement of Claim. The Macks presented extensive evidence demonstrating the land description was in error, including the "Amended and Updated Decree of Distribution of the Waters of the Burnt Fork Watershed, Ravalli County, Montana" issued by the Ravalli County District Court in 1978 (1978 Decree). The 1978 Decree included a map that located and numbered the various PODs in the drainage including Headgate 103, which was located in the NESWSW Section 4, Township 8 North, Range 19 West. Based upon this information, the Macks amended the Statement of Claim to correct this error on April 10, 2015.

¶11    The District Court issued its Findings of Fact, Conclusions of Law, and Order on September 16, 2015. The court found that the Macks were entitled to the preliminary injunction, and that the Macks or their agents must be provided access to the POD in the NESWSW Section 4, Township 8 North, Range 19 West, and along the course of the Mack Ditch for the purpose of installing the headgate and for repair and maintenance

purposes. The court also indicated that the Macks demonstrated a likelihood they would prevail on the merits and reserved the issue of an award of attorney fees and costs allowed under § 70-17-112, MCA. Andersons appeal.

## STANDARDS OF REVIEW

¶12 District courts are vested with a high degree of discretion to maintain the status quo through injunctive relief. *Shammel v. Canyon Res. Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, 82 P.3d 912. This Court will not disturb a district court's decision to grant or deny a preliminary injunction unless a manifest abuse of discretion is shown. *Cole v. St. James Healthcare*, 2008 MT 453, ¶ 9, 348 Mont. 68, 199 P.3d 810 (citing *Sweet Grass Farms, Ltd. v. Bd. of Cnty. Comm'rs*, 2000 MT 147, ¶ 20, 300 Mont. 66, 2 P.3d 825). "A 'manifest' abuse of discretion is one that is obvious, evident or unmistakable." *Shammel*, ¶ 12. If the district court issues an injunction based on conclusions of law, we review those conclusions for correctness. *Cole*, ¶ 9.

## DISCUSSION

¶13 *Did the District Court exceed its jurisdiction by ruling on the merits of the parties' dispute?*

¶14 Preliminary injunctions are governed by § 27-19-201, MCA, which provides in five subsections the circumstances under which an injunction may be granted. Arguments at the District Court were directed toward subsections (1) and (2), which provide that a preliminary injunction may be issued:

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;

7

> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant.

¶15 We note that the subsections of § 27-19-201, MCA, are disjunctive, and findings that satisfy one of the five factors are sufficient to support a preliminary injunction. *Sweet Grass Farms*, ¶ 27 (citation omitted). For the injunction to issue, the applicant must show that he "has a legitimate cause of action, and that he is likely to succeed on the merits of that claim," and must also show that an injunction is an appropriate remedy. *Sandrock v. DeTienne*, 2010 MT 237, ¶ 16, 358 Mont. 175, 243 P.3d 1123 (citing *Cole*, ¶ 15). "[A]n applicant for a preliminary injunction must establish a prima facie case, or show that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated." *Sandrock*, ¶ 16 (citation omitted). "Upon the requisite showing, a preliminary injunction is issued to maintain the status quo pending trial, which has been defined as 'the last actual, peaceable, noncontested condition which preceded the pending controversy.'" *Sandrock*, ¶ 16. Finally, regarding the determination of a preliminary injunction, "[w]e have consistently held that a district court should not resolve the ultimate merits of the case when initially analyzing the propriety of a preliminary injunction." *City of Whitefish v. Bd. of Cnty. Comm'rs of Flathead Cnty.*, 2008 MT 436, ¶ 18, 347 Mont. 490, 199 P.3d 201 (citation omitted).

¶16 The Andersons challenge the District Court's factual findings and legal conclusions arguing that the court adjudicated matters beyond the preliminary injunction and reached the merits of the case. The Macks respond that the Andersons have failed to identify any language in the Order which improperly reached the merits of the case while

8

defending Judge Haynes' position that the court reserved judgment on the merits without prejudice to the ultimate resolution of the case.

¶17 The District Court held four hearings to gather evidence regarding the ditch easement and headgate location in an attempt to determine the status quo or "the last actual, peaceable, noncontested condition which preceded the pending controversy." *Sandrock*, ¶ 16. Because the Andersons' defense in the matter was based on the premise that the Macks lacked ditch rights through the Andersons' property, not that the Andersons were interfering with the Macks' irrigation ditch rights, the District Court needed to inquire whether the Macks were likely entitled to the relief they requested as applicants for an injunction. This determination included whether the Macks possessed water rights, and if so, how the water is delivered to the Mack property.

¶18 While the Andersons characterize this inquiry as a final adjudication on the merits, it is clear from the District Court Order that the court's findings were not a final determination. The court concluded in the Order that "it is likely that the Macks will succeed on their claims against Defendants." Regarding the prescriptive easement the District Court noted "[t]he Macks have established the strong likelihood they will succeed on the merits" and listed its reasoning for the initial determination. Finally, the court found that the status quo to be maintained in this case is the Macks' ability to make beneficial use of their undisputed South Burnt Fork Creek water right by way of the historic diversion point and route of the Mack Ditch. The court established this as the status quo, imposed the injunction, and added that a determination on the merits would follow as part of the proceedings.

9

¶19 The court determined that the Macks made a proper showing for an injunction, including a showing that they are likely to succeed on the merits. The court was also careful to state, both during the hearing and in its order, that it was reserving judgment on the ultimate issues of the case. *Sandrock*, ¶ 24. The Andersons have not identified language in the court's order that reached the merits of the case. Instead, their arguments are directed at their dissatisfaction with the court's determination of the status quo of the current controversy.

¶20 The District Court gathered evidence and carefully untangled the issues of the case to establish the status quo prior to the request for preliminary injunction. The District Court made proper findings and clearly reserved final adjudication on the merits in the Order. The preliminary injunction determination was not an abuse of the court's discretion.

¶21 *Did the District Court exceed its jurisdiction by establishing or changing the POD for the ditch in dispute?*

¶22 Andersons argue that the District Court brushed aside the Water Court's exclusive jurisdiction to determine points of diversion under § 85-2-234(6)(g), MCA, and created a new POD for Headgate 103. Macks respond that no place of use or means of diversion was changed under the court's findings and Order.

¶23 It is well established that ditch or easement rights are separate and distinct property rights from a water right. *Connolly v. Harrel*, 102 Mont. 295, 57 P.2d 781 (1936). Jurisdiction to interpret and determine existing water rights rests exclusively with the water court. *Mildenberger v. Galbraith*, 249 Mont. 161, 166, 815 P. 2d 130, 134

10

(1991); § 3-7-501, MCA. Conversely, district courts are granted authority to supervise the distribution of water through ditches and other distribution means concerning water rights which have already been adjudicated. *Baker Ditch Co. v. District Court*, 251 Mont. 251, 255, 824 P.2d 260, 262-63 (1992); § 85-2-406(3), MCA.

¶24 The District Court in these proceedings was tasked with the responsibility for interpreting the 1978 Decree and the location of Headgate 103 referenced within the 1978 Decree, as it was the place of diversion for Macks' claimed ditch right which was the water distribution method in dispute. The 1978 Decree had a map depicting the physical location of Headgate 103 within the NESWSW Section 4, Township 8 North, Range 19 West. The Andersons presented the District Court with evidence that had been submitted to the Water Court, in the form of Statements of Claim 76H 125130-00 and 76H 125131-00, which indicated a different location for the Headgate 103 and which tended to defeat Macks' ditch claim under the 1978 Decree because it placed Macks' POD in SWNWSW Section 4, Township 8 North, Range 19 West. In order to assess the weight to be attributed the Statements of Claim evidence, the District Court considered Macks argument that the Statements of Claim contained an error in the location of the POD, as well as evidence presented by Turek, two water commissioners, Mack, and documentary evidence. Presentation of this evidence spanned four days. The District Court ultimately concluded that the 1978 Decree depicted the POD as claimed by Mack and rejected Andersons' argument that the Statements of Claim altered that which had been set forth in the 1978 Decree. That the District Court concluded the Macks' water rights claims contained an error is inconsequential, except for the fact that it

11

demonstrated the court weighed and considered the evidence presented in an effort to distribute the water pursuant to the 1978 Decree. The District Court did not change the physical location of a POD, which is the province of the Water Court, but rather interpreted the location of the POD as depicted in the 1978 Decree, following consideration of evidence which had also been submitted to the Water Court.

¶25    The District Court therefore was careful not to tread upon the jurisdiction of the Water Court while maintaining its obligation to determine whether a preliminary injunction was necessary to protect the Macks' ditch rights. The considerations are often discreet and demonstrate the difficulty for a district court in managing distribution controversies concerning water.

¶26    *Did the District Court usurp the Andersons' right to a jury trial regarding the existence of an irrigation ditch which crosses Andersons' property?*

¶27    The Andersons' final argument is that the District Court determined the merits of the dispute regarding the Mack Ditch. The Andersons argue this conclusion took away their right to a jury trial. However, this argument fails to recognize the plain language of the District Court's Order. Judge Haynes clearly acknowledged in the Order that the court's determinations were to preserve the status quo and that the rights of the parties would be determined at trial. The Order specifically directs the parties to file status reports within 90 days and make requests at the time for a trial setting "to permanently decide and finalize any remaining contested issues." The District Court anticipated further litigation of the issues, including a final determination regarding rights on the Mack Ditch. The Andersons' argument that their right to a jury trial was usurped by the

court's status quo determination is incorrect. The District Court's conclusions of law were correct and the court clearly reserved the merits of the case for a jury as requested by the Andersons.

## CONCLUSION

¶28 The District Court made proper findings and clearly reserved final adjudication on the merits in the Order and the preliminary injunction determination was not an abuse of the court's discretion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER