DA 19-0678
IN THE SUPREME COURT OF THE STATE OF MONTANA
2021 MT 25

FILED

02/02/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0678

SUNSET IRRIGATION DISTRICT;
CAROLYN R. MACK and CHRISS A. MACK,

      Claimants and Appellees,

UNITED STATES OF AMERICA
(FISH AND WILDLIFE SERVICE);
GLENDA F. ANDERSON; JIMMY M. ANDERSON;
JOHN ANDERSON; ROWDY ANDERSON,

      Objectors and Appellants.

APPEAL FROM:    Montana Water Court, Case Nos. 76HA-107 and 76HA-108
                Honorable Russ McElyea, Chief Water Judge

COUNSEL OF RECORD:

      For Appellants:

          Raymond P. Tipp, Tipp Coburn & Associates PC, Missoula, Montana

      For Appellees:

          David B. Cotner, Kyle C. Ryan, Thorin A. Geist, Cotner Law, PLLC, Missoula, Montana

                            Submitted on Briefs: December 9, 2020

                                   Decided: February 2, 2021

Filed:

                    _____
                           Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Glenda Anderson, Jimmy Anderson, John Anderson, and Rowdy Anderson (collectively Andersons) appeal an order from the Montana Water Court which established the point of diversion for claims owned by Carolyn Mack and Chriss Mack (Macks) and identified as 76H 125130-00 and 76H 125131-00.[1]  The Water Court concluded the Macks' point of diversion for both claims was in the NESWSW of Section 4, Township 8 North, Range 19 West.  We affirm.

¶2     The Andersons present the following issues for review:

1.  *Whether the Water Court erred when it concluded it could exercise jurisdiction over Macks' Amended Statement of Claim?*

2.  *Whether the Water Court abused its discretion in concluding the Macks did not make any judicial admissions in previous litigation?*

3.  *Whether the Water Court erred in assigning the burden of proof to the Andersons?*

4.  *Whether the Water Court abused its discretion in excluding the Andersons' expert witness?*

5.  *Whether the Water Court's findings of fact were clearly erroneous?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     The Mack and Anderson families own land southeast of Stevensville, Montana, in the South Burnt Fork Creek Watershed in Ravalli County.   The Macks own a 160-acre section adjacent to the Andersons, who individually own several adjoining

---

[1] Appellee Sunset Irrigation District owns rights to the water in Burnt Fork Creek, but their claims were resolved in two settlement agreements when this matter was brought before the Water Court in 2019.

five-acre parcels, along with a forty-acre parcel. The Macks' claims 76H 125130-00 and 76H 125131-00 for water from the South Fork of Burnt Fork Creek, a tributary of the Bitterroot River, utilize the "Mack Ditch" or "old farm ditch" which crosses the Andersons' property to deliver Macks' water. The claims are based on original rights decreed to Thomas Johnson in a 1905 decree titled *Cowell v. Julian* (Burnt Fork Decree). Thomas Johnson is Julie Wallace's predecessor of the water rights; Julie Wallace, in turn, is Macks' predecessor of the water rights. The Burnt Fork Decree issued two water rights to Thomas Johnson for water diverted from South Burnt Fork Creek: one right was for 120 miner's inches with a May 25, 1881 priority date and the other for 85 miner's inches with a June 15, 1886 priority date. [2]

¶4 The Ravalli County District Court issued a second decree of water rights in 1978 and identified Julie Wallace as the owner of the two rights claimed by Johnson. In the 1978 Amended Decree, the Wallace rights were assigned a point of diversion identified as Headgate 103, POD 103, and located in the NESWSW of Section 4. This location is the same point of diversion claimed by the Macks and disputed by the Andersons.

¶5 In 1982, Julie Wallace filed both claims with the Department of Natural Resources and Conservation (DNRC). However, the Statements of Claim identified the point of diversion for Headgate 103 in the SWNWSW of Section 4. In 2002, the Macks acquired ownership of Wallace's property and the 76H claims. In December 2013, the DNRC

---

[2] The Water Court placed claim 76H 125130-00 in case 76HA-107 and claim 76H 125131-00 in case 76HA-108. Because the Water Court came to the same conclusion for both cases and for purposes of brevity, we designate the cases as "the 76H claims."

examined Macks' claims and placed the point of diversion for Headgate 103 in the NESWSW of Section 4. Consequently, on April 15, 2015, the Macks submitted an Amendment/Correction to the Statements of Claim (Amendment) for Water Right Nos. 76H 125130-00 and 76H 125131-00 to correct the legal description for Headgate 103 to be in the NESWSW of Section 4. The Macks' claims were included in the Basin 76HA Preliminary Decree issued December 4, 2015.

¶6 The Andersons filed objections with the Water Court alleging Macks' claims were abandoned and the 2015 Amendment contradicted the 1978 Amended Decree.[3] The sole issue before the Water Court was the location of the point of diversion for the 76H claims. During the hearings, the Andersons presented testimony from several witnesses who irrigated the Wallace property prior to Macks owning the land and water rights. The Andersons attempted to present expert testimony from Lee Yellin (Yellin) on the location of Headgate 103 but failed to provide timely notice and were prohibited by the Court from presenting his expert testimony. The Water Court still allowed Yellin to testify regarding his personal knowledge of the properties and he introduced aerial photographs, surveys, maps, and provided a personal opinion of Headgate 103's location. The Macks presented

---

[3] Between the DNRC's examination in 2013 and the Macks' 2015 Amendment, the Macks filed suit against the Andersons (DV-2014-231), in the Twenty First Judicial District Court, Ravalli County, relating to the Andersons interference with the Macks' ability to utilize the Mack Ditch that diverts water from Headgate 103. The Andersons appealed the District Court's determination that the location of Headgate 103 was that decreed in the 1978 Amended Decree, the NESWSW of Section 4, and the issuance of a preliminary injunction preventing interference by the Andersons of the Macks' use of the ditch and headgate. We affirmed. *See generally Mack v. Anderson*, 2016 MT 204, 384 Mont. 368, 380 P.3d 730. The Water Court took judicial notice of this Court's decision in *Mack* and stated it "makes no determination here regarding ownership or use of the old farm ditch, also referred to as the Mack Ditch in the Supreme Court's order."

an expert witness who testified that, while utilizing GPS, she walked the creek and located the headgate in the NESWSW of Section 4. Additionally, the Macks presented numerous aerial photographs from 1995 to 2014 and compared them to an aerial photograph from 1972, all of which depicted Headgate 103 in the NESWSW of Section 4.

¶7 The Water Court found the witnesses called by the Andersons either had little personal knowledge of irrigation practices or offered recollections that were inconsistent and not credible. It concluded that if the headgate had ever been utilized in the SWNWSW of Section 4, it was decades ago and that most of the water over the past fifty years had been diverted through the NESWSW of Section 4. The Water Court held the Macks took the necessary steps to correct the point of diversion identified in Wallace's Statements of Claim by filing their 2015 Amendment, which was before the issuance of the Preliminary Decree in Basin 76HA. The Water Court held although there was evidence that at some time the point of diversion may have been in a slightly different position prior to 1972, the testimony and the aerial photograph established that the correct point of diversion for the 76H claims was in the NESWSW of Section 4. The Andersons appeal the Water Court's decision alleging multiple issues.

## STANDARDS OF REVIEW

¶8 We apply the same standard of review to the Water Court as we do to an appeal from district court. *Heavirland v. State*, 2013 MT 313, ¶ 14, 372 Mont. 300, 311 P.3d 813. We review the Water Court's order de novo, to determine whether its conclusions of law were correct. *Skelton Ranch, Inc. v. Pondera Cty. Canal & Reservoir Co.*, 2014 MT 167, ¶ 26, 375 Mont. 327, 328 P.3d 644. This Court reviews the Water Court's findings of fact

5

to determine whether they are clearly erroneous. *Skelton Ranch*, ¶ 26. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made. *Skelton Ranch*, ¶ 27. "Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion . . . ." *Skelton Ranch*, ¶ 27. This Court must review the evidence in the light most favorable to the prevailing party and leave the trial court to determine the credibility of witnesses and the weight assigned to their testimony. *Only a Mile, LLP v. State*, 2010 MT 99, ¶ 10, 356 Mont. 213, 233 P.3d 320.

¶9 This Court reviews a trial court's rulings on the admissibility of evidence to determine whether the court abused its discretion and, absent a showing of such abuse, will not overturn a trial court's decision. *Christofferson v. City of Great Falls*, 2003 MT 189, ¶ 8, 316 Mont. 469, 74 P.3d 1021. This Court has previously affirmed the authority of a trial court to exclude expert testimony because of failure to disclose the expert witness. *Nelson v. Nelson*, 2005 MT 263, ¶ 32, 329 Mont. 85, 122 P.3d 1196.

**DISCUSSION**

¶10 *1. Whether the Water Court erred when it concluded it could exercise jurisdiction over Macks' Amended Statement of Claim?*

¶11 The Andersons first assert the Macks' 2015 Amendment was time-barred because § 85-2-221(3) and (4), MCA, impose a deadline of July 1, 1996, to file a statement of claim for an existing water right and Macks filed their Amendment on April 15, 2015. Along similar lines, Andersons argue that Macks had knowledge of the mistakes in the Statements of Claims filed by Wallace and that under the two-year statute of limitations for fraud or

6

mistake set forth in § 27-2-203, MCA, the Amendment is time-barred.  Finally, Andersons argue that the Macks' Amendment was not properly attested to and constituted a collateral attack on the 1978 Decree.  Andersons' contentions are easily disposed of.

¶12    Section 85-2-221(1), MCA, requires that a person claiming an existing right shall file their claim with the department no later than June 30, 1983.  Wallace, Macks' predecessor, complied with the statutory deadline for filing a claim under § 85-2-221(1), MCA, when she filed her 76H claims on March 18, 1982.  Section 85-2-221, MCA, does not, however, set a deadline for when amendments must be filed.  The controlling statute for filing amendments where there has not been a final decree issued is § 85-2-227(1), MCA, which provides:

> For purposes of adjudicating rights pursuant to this part, a claim of an existing right filed in accordance with § 85-2-331, MCA, *or an amended claim of existing right constitutes prima facie proof of its content until the issuance of a final decree*.  For purposes of administering water rights, the provisions of a temporary preliminary decree or a preliminary decree, as modified after objections and hearings, supersede a claim of existing right until a final decree is issued.

(Emphasis added.) The Macks' 2015 Amendment was filed on April 10, 2015—over eight months prior to the DNRC's issuance of the Preliminary Decree in Basin 76HA on December 4, 2015.  We agree with the Water Court's determination that the Macks corrected the legal description contained in Wallace's Statements of Claim by filing an amendment prior to the issuance of the Preliminary Decree in Basin 76HA.  Thus, the

7

Water Court correctly concluded it could consider the 2015 Amendment and the 2015 Amendment was not time-barred under § 85-2-221(3), MCA.[4]

¶13 The Andersons assert the Macks' 2015 Amendment lacked proper verification in that the attestation filed in support of their claim did not verbatim incorporate the language of § 85-2-224, MCA, which requires the statement of claim to be based on the claimant's "knowledge and belief." The Amendment which is signed by the Macks provides: "I declare under penalty of perjury (§ 45-7-201, MCA) under the laws of the state of Montana that the foregoing content of this form is true and correct." The Macks' failure to include the words "to the best of [their] knowledge and belief" does not render the Amendment ineffective.

¶14 Finally, the Andersons allege the Macks' 2015 Amendment was a collateral attack on the 1978 Amended Decree and they maintain the Water Court did not have proper jurisdiction to change the point of diversion. However, we addressed this argument previously in 2016. *Mack*, ¶¶ 22-25. In that matter, we noted "the District Court ultimately concluded that the 1978 Amended Decree depicted the [point of diversion] as claimed by Mack and rejected Andersons' argument that the Statements of Claim altered that which had been set forth in the 1978 Decree." *Mack*, ¶ 24. We held the District Court "was careful not to tread upon the jurisdiction of the Water Court" in protecting the Macks' ditch rights in a preliminary injunction context. *Mack*, ¶ 25. Here, the Water Court relied

---

[4] The Andersons also maintain the Macks' Amendment was time-barred under § 27-2-203, MCA, which requires that an action for relief based on fraud or mistake be commenced within two years. However, § 85-2-227(1), MCA, expressly allows the filing of amendments and applies to water claims adjudications. Section 27-2-203, MCA, has no application in the present case.

8

upon the 1978 Amended Decree and the attached map when it concluded the Macks' 2015 Amendment was consistent with the 1978 Amended Decree, rather than constituting a collateral attack upon the decree.

¶15 *2. Whether the Water Court abused its discretion in concluding the Macks did not make any judicial admission in previous litigation?*

¶16 The Andersons next allege the Water Court abused its discretion when it ignored the Macks' alleged judicial admissions made during earlier litigation when the Macks sought a preliminary injunction. A judicial admission is "an express waiver made in court by a party or his attorney conceding the truth of an alleged fact." *DeMars v. Carlstrom*, 285 Mont. 334, 337, 948 P.2d 246, 248 (1997). A judicial admission is not binding unless it is an *unequivocal statement of fact*. *DeMars*, 285 Mont. at 337, 948 P.2d at 248 (emphasis added). For a judicial admission to be binding upon a party, the admission must be one of fact rather than a conclusion of law or the expression of an opinion. *DeMars*, 285 Mont. at 338, 948 P.2d at 249. The Andersons allege the Macks made judicial admissions in three separate pleadings that indicated the historical and geographical location of Headgate 103 was in the SWNESW of Section 4. However, the location of Headgate 103 constitutes a legal description and would not constitute an unequivocal statement of fact. Moreover, and quite simply, the Macks mistakenly cited to an incorrect legal description for Headgate 103 within certain pleadings. Despite their error, the Macks' legal position did not change—the location of Headgate 103 remained in the NESWSW of Section 4. The Water Court relied on evidence, including aerial photographs, expert testimony, and the 1978 Amended Decree, to determine the location of Headgate 103. The

9

Andersons' argument that Macks made judicial admissions in previous litigation was properly rejected by the Water Court.

¶17  *3.  Whether the Water Court erred in assigning the burden of proof to the Andersons?*

¶18  The Andersons maintain the Water Court erred in granting the Macks' Amendment prima facie status, suggesting instead that the Macks' Amendment had to be "allowed" by the Water Court given the definition of "amended claim" in the Water Court's rules.[5]  The Andersons claim the Macks should have the burden of proof since they are objectors to their own claim—the Wallace claims—whereas the Andersons' objections are to the Macks' 2015 Amendment.

¶19  The Water Court has a statutory obligation and exclusive authority to adjudicate claims of existing water rights.  M. W. R. Adj. R. 1(a).  A water right claim, "or an amended claim of existing right, constitutes prima facie proof of its content until the issuance of a final decree."  Section 85-2-227(1), MCA.  "[A]n objector has the burden to prove by a preponderance of the evidence that the elements of the original claim 'do not accurately reflect the beneficial use of the water right as it existed prior to July 1, 1973.'"  *Nelson v. Brooks*, 2014 MT 120, ¶ 37, 375 Mont. 86, 329 P.3d 558; M. W. R. Adj. R. 19.  The adjudicatory rules of the Water Court also address the burden of proof:

> A properly filed Statement of Claim for Existing Water Right is prima facie proof of its content pursuant to § 85-2-227, MCA.  This prima facie proof

---

[5] *See* W. R. C. E. R. 2(a)(4), which defines "amended claim" as "the contents of a submitted claim as altered or changed by the claimant as to any matter contained in the original claim and as allowed by the water court."  However, W. R. C. E. R. 34(a) states, "a claimant may request and authorize a modification of their claim prior to that claim's inclusion in an interlocutory decree issued for the particular basin."  *See also* § 85-2-233(6), MCA.

10

may be contradicted and overcome by other evidence that proves, by a preponderance of the evidence, that the elements of the claim do not accurately reflect the beneficial use of the water right as it existed prior to July 1, 1973. This is the burden of proof for *every assertion* that a claim is incorrect including for claimants objecting to their own claims.

(Emphasis added.) M. W. R. Adj. R. 19. The Macks, in their objection to the Wallace claims, addressed the incorrect legal description of Headgate 103's location by filing the 2015 Amendment before issuance of the Preliminary Decree in Basin 76HA. Under § 85-2-227(1), MCA, Macks' Amendment is an "amended claim of an existing right" and is prima facie proof of its contents. The Water Court properly placed the burden on the Andersons to prove by a preponderance of the evidence that the Amendment did not accurately reflect the location of Headgate 103. Andersons did not meet their burden because the Water Court concluded, based upon a preponderance of the evidence, that the aerial photographs, the 1978 Amended Decree, and other evidence established the location of Headgate 103 was in the NESWSW of Section 4.

¶20   *4. Whether the Water Court abused its discretion in excluding the Andersons' expert witness?*

¶21   The Andersons assert the Water Court abused its discretion by precluding Yellin from offering expert testimony. "If a party fails to disclose information regarding opinions of a witness as required by Rule 26(b)(4), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." M. R. Civ. P. 37(c)(1). The underlying purpose of Rule 26 is to eliminate surprise and to promote effective cross-examination of experts. *Henricksen v. State,* 2004 MT 20, ¶ 57, 319 Mont. 307, 84 P.3d 38. A court should examine

the adequacy of an expert disclosure considering those underlying purposes. *Sharbano v. Cole*, 2015 MT 257, ¶ 12, 381 Mont. 13, 355 P.3d 782.

¶22 The Andersons argue Yellin was disclosed a week before the scheduled hearing in July, thus giving the Macks enough time to respond. The Water Court's May 21, 2018, Scheduling Order for the 76H claims required the parties to disclose their witnesses—both lay and expert—by August 25, 2018. The Andersons disclosed Yellin 11 months after the Water Court's deadline and only one week before the July hearing. The Andersons further claim the Macks stipulated to the admission of their expert witness; the Macks did not object to the admission of Yellin; and Macks had the opportunity to depose Yellin. However, the Macks expressly objected to the admission of Yellin's expert testimony and deposed Yellin only about his lay testimony. Moreover, the Water Court only precluded Yellin from providing expert testimony and Yellin was allowed to testify about his personal knowledge of the parties' properties and his recollection of Headgate 103's location. Under these circumstances, and because the Andersons failed to abide by the Water Court's Scheduling Order, the Water Court did not abuse its discretion when it prohibited Yellin from offering expert testimony.

¶23 *5. Whether the Water Court's findings of fact were clearly erroneous?*

¶24 The Andersons assert five findings of fact were either clearly erroneous or misapprehended the evidence: (1) the Water Court's finding that the 1978 Amended Decree placed Headgate 103 in the NESWSW of Section 4; (2) the Water Court misapprehended the effect of the 1978 Amended Decree and mistakenly determined the location of Headgate 103; (3) the Water Court misapprehended the evidence by finding the

water had been diverted through the NESWSW of Section 4, when there was witness testimony indicating the location of Headgate 103 was in the SWNWSW of Section 4; (4) the Water Court found that members of the Anderson family have used the NESWSW of Section 4 to divert water; and (5) the Water Court found the Statements of Claim incorrectly described the location of Headgate 103 as the SWNWSW of Section 4 rather than the NESWSW of Section 4.

¶25 Regarding the first finding of fact, the Andersons allege the Water Court did not have evidence to support that the location of Headgate 103 was in the NESWSW of Section 4. However, the Water Court thoroughly evaluated the 1978 Amended Decree and the location of Headgate 103. It noted the Ravalli County District Court attached a map to its 1978 Amended Decree depicting Headgate 103 as in the NESWSW of Section 4. Additionally, the Water Court relied on the 1972 aerial photographs and numerous other photographs which showed the point of diversion for the 76H claims in the NESWSW of Section 4. The Water Court's finding of fact was based on substantial credible evidence and is not clearly erroneous.

¶26 The Andersons' second contention that the Water Court misapprehended the effect of the 1978 Amended Decree and the location of Headgate 103 is equally misdirected. The Water Court, again, relied upon the 1978 Amended Decree and the map attached to the 1978 Amended Decree to determine the decree set forth the location of Headgate 103 as in the NESWSW of Section 4. We again find the Water Court's decision was not clearly erroneous.

13

¶27 The third finding of fact the Andersons assert is clearly erroneous concerns testimony from one of the Andersons' witnesses—who described the location of Headgate 103 as in the SWNWSW of Section 4. In its final order, the Water Court held the location of Headgate 103 was in the NESWSW of Section 4. The Andersons contend the finding is contradicted by the testimony of their own witness and thus was not based on substantial evidence. The Water Court was diligent in its final order and, using the evidence before it, recognized that while there was some evidence that both the 76H claims were diverted in the SWNWSW of Section 4, it was evidence of a retired practice decades earlier. The Water Court found the 76H claims were primarily diverted in the NESWSW of Section 4. The Water Court's determination of the location of Headgate 103 was not clearly erroneous and was based upon substantial credible evidence.

¶28 The Andersons also argue the Water Court's finding that members of the Anderson family diverted water from the NESWSW of Section 4 is not supported by any evidence. The Water Court heard testimony from Jimmy Anderson and his grandson, Rowdy Anderson, confirming the use of a relief ditch in the NESWSW of Section 4 which conveyed water from South Burnt Fork Creek to a gravel pit between 2008 and 2009. The Water Court used this testimony to determine its finding that some members of the Anderson family used water from Headgate 103 in the NESWSW of Section 4. The Water Court's finding was supported by substantial evidence and thus was not clearly erroneous.

¶29 Finally, the Andersons assert the Water Court's finding of fact that the Statement of Claims incorrectly identified the location of Headgate 103 was not based on substantial

evidence. They maintain that because no witness testified to this finding of fact and there was no evidence that Wallace intended to claim a point of diversion at the NESWSW of Section 4, the finding was not supported with evidence. Although Wallace did not provide testimony regarding this finding, the Water Court relied upon other evidence to establish the legal description of Headgate 103 was incorrectly described within the Statement of Claims filed by Wallace. Once again, the Water Court utilized the 1978 Amended Decree, the map attached to the 1978 Amended Decree, aerial photographs, testimony, and other evidence to confirm that the correct legal location of Headgate 103 was in the NESWSW of Section 4. The Water Court's finding of fact was not clearly erroneous.

## CONCLUSION

¶30 The Macks' Amendment was correctly accepted by the Water Court. The Water Court did not abuse its discretion in excluding Andersons' witness from providing expert testimony when Andersons failed to provide timely notice of their intent to present expert testimony. There was substantial evidence supporting the Water Court's conclusion the location of Headgate 103 was in the NESWSW of Section 4.

¶31 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

15